383 P.2d 596

Clarence F. MILLER and Ethel R. Miller, husband and wife, Plaintiff-Appellants,

v.

W. C. REMIOR and Martha Remior, husband and wife, Defendants-Respondents.

No. 9098.

Supreme Court of Idaho.

July 12, 1963.

Furey & Furey, Salmon, for appellants.

Frederick H. Snook, Salmon, Ferebauer & Barnard, Idaho Falls, for respondents.

SMITH, Justice.

The case is a consolidation of two actions, tried without a jury. One action was commenced by plaintiffs-appellants, hereinafter referred to as plaintiffs, sellers of certain real property, for cancellation of a written contract for the sale and purchase of real property, and for damages (Civil No. 1800). The other action was commenced by defendants-respondents, hereinafter referred to as defendants, the buyers, for rescission of the contract (Civil No. 1790). The trial court dismissed defendants' rescission action, and found in favor of plaintiffs on their action for cancellation and damages. The court entered judgment partially unsatisfactory to plaintiffs, from which they perfected an appeal. The basic facts are hereinafter related.

Plaintiffs and defendants entered into the contract April 15, 1958. It provided for the sale by plaintiffs and purchase by defendants of certain ranch property in Custer County, the title to remain in plaintiffs until the agreed purchase price of $29,844.25 had been paid. Plaintiffs accepted defendants' down payment on purchase price of $10,000 in cash as recited in the contract, which, according to the testimony, was the agreed value of a house and lot situate in Idaho Falls conveyed by defendants to plaintiffs as the cash down payment. Interest of $578.76 accrued to November 5, 1958, on the unpaid balance of purchase price was required to be paid. The balance of the purchase price was to be paid in ten annual equal installments of $1,984.42 with interest on deferred payments, commencing November 15, 1959.

The contract provided that time was of the essence thereof; that in the event of default of its terms by buyers, the sellers could give buyers written notice of default,

and if within 60 days thereafter the default was not cured, sellers could declare the contract terminated and take possession of the property, retaining all payments theretofore made by buyers "in liquidated damages for their non-performance of the contract"; or sellers could resort to any other remedy which could be had by law or in equity in the event of buyers' default.

Defendants, buyers, went into possession and paid only the interest payment of $578.76 due November 15, 1958, and no more. They filed suit November 9, 1959, for rescission of the contract, upon alleged grounds of fraud on plaintiffs' part in the inception of the contract, (Civil No. 1790).

Defendants failed to make payment of the annual installment and interest due under the contract on November 15, 1959. November 24, 1959, plaintiffs served defendants with written notice of default, and more than 60 days thereafter, with notice of declaration of forfeiture of the contract, together with demand for possession of the lands and premises covered by the contract.

April 18, 1960, plaintiffs filed their action (Civil No. 1800), setting forth the contract, notice of default, notice of forfeiture of the contract, and praying for a decree declaring the contract at an end, for restitution of the lands and premises, and for damages.

The trial court consolidated the two actions, and its findings, conclusions and judgment encompassed and disposed of both cases.

In defendants' action for rescission (Civil No. 1790), the trial court found that plaintiffs had not been guilty of fraud in the transaction, denied rescission and dismissed the action.

In plaintiffs' action for cancellation and for damages (Civil No. 1800), the trial court found that defendants were in default and were duly notified of default and forfeiture of the contract; that the liquidated damages claimed constituted a penalty and would not be enforced; that the court would make an equitable adjustment between the parties; that the residence property conveyed by defendants as the down payment had a rental value of $105.00 a month which, for the period from April 15, 1958, to June 15, 1961, totaled $3,990; that the fair rental value of the ranch was $2400 per annum which, during the same period, totaled $7,600; and in effect concluded that any depreciation of the premises was offset by appreciation.

The court adjudged the contract terminated; voided the contract, deed and other instruments relating to the sale and purchase of the ranch property; adjudged plaintiffs to be the owners and entitled to

immediate possession, and that defendants had no right, title or interest therein. The court then entered the portion of its judgment in the alternative reading:

"In the event plaintiffs keep the home located in Idaho Falls, Bonneville County, Idaho, conveyed to them by defendants as a down payment on said ranch purchase, defendants are entitled to credits as follows:

| | |
|---|---|
| Down payment (home) | $ 10,000.00 |
| Interest payment | 578.76 |
| Rental value of home conveyed, 4–15–58 to 6–15–61, 38 months at $105.00 a month | 3,990.00 |
| Total | $ 14,568.76 |

And the plaintiffs are entitled to credits, as follows:

Rental value of ranch at $2400 per annum:

| | | |
|---|---|---|
| 4–15–58 to 4–15–59 | $ 2,400.00 | |
| 4–15–59 to 4–15–60 | 2,400.00 | |
| 4–15–60 to 4–15–61 | 2,400.00 | |
| 4–15–61 to 6–15–61 | 400.00 | |
| Total | $ 7,600.00 | |
| Balance | $ 6,968.76 | |

Should plaintiffs keep the home conveyed, they must pay to defendants the aforesaid sum of $6,968.76.

In the event plaintiffs reconvey the home to defendants, plaintiffs are entitled to credits as follows:

| | |
|---|---|
| Rent on Ranch | $ 7,600.00 |

And the defendants are entitled to credits as follows:

| | | |
|---|---|---|
| Interest paid | $ 578.76 | |
| Rent on home | 3,990.00 | 4,568.76 |
| | Balance | $ 3,031.24 |

Should plaintiffs reconvey the home, defendants must pay to plaintiffs the sum of $3,031.24."

———◆———

The court further adjudged that plaintiffs pay taxes on the ranch property and defendants pay taxes on the Idaho Falls residence property; also, that after June 15, 1961, until restoration to plaintiffs of the ranch property, the rent thereon be fixed

at $200.00 a month; further, should the parties elect the second alternative by the judgment provided, and the residence property be restored to defendants, that the rent thereon be fixed at $105.00 a month until date of reconveyance.

Plaintiffs, by their first assignment, which we deem to be meritorious, contend that the trial court erred in awarding as a credit to defendants, the amount of $3990.00 rental value of the residence property; and contend that the judgment of the trial court is repugnant to the mandate of Graves v. Cupic, 75 Idaho 451, 272 P.2d 1020.

The issue presented herein is comparable to that of Graves v. Cupic. The trial court, under the facts shown in the case at bar, regarded as unenforceable the clause of the contract which provided, that in case of defendants' default and termination of the contract plaintiffs could take possession of the property, "retaining all payments theretofore made by vendees [defendants] in liquidated damages for their non-performance of the contract." Graves v. Cupic involved a similar provision which read, "[A]ny payments theretofore made hereunder by the purchaser shall be retained by the seller in liquidation of damages sustained by reason of such failure." This Court, after holding that under the circumstances shown in Graves v. Cupic, such provision "is for a penalty and is unenforceable," then held:

"In such a situation the damages allowable are those which the law provides for breach of the contract as though no such provision had been inserted therein." (Citing Perkins v. Spencer, 121 Utah 468, 243 P.2d 446.)

and therein announced the further rule, citing State ex rel. Robins v. Clinger, 72 Idaho 222, 238 P.2d 1145:

"* * * the measure of damages for breach of a contract for the sale of realty * * * [is] the difference between the contract price and the market value of the property at the time of the breach, unless by the contract the parties had stipulated otherwise."

Here, however, neither plaintiffs' pleadings nor the evidence adduced justified application of that rule of ascertainment of damages, and the trial court did not apply the rule. Continuing in Graves v. Cupic, this Court held:

"* * * Generally where the defaulting purchaser has had possession of the property the damage due the vendor is enhanced by the rental value during such occupation." (Citing Nelson v. Hoff, 70 Idaho 354, 218 P.2d 345; Williamson v. Smith, 74 Idaho 79, 256 P.2d 784.)

In the present case the trial court set aside the so-called penalty clause of the contract as being unconscionable in the light of the court's calculations of the amount which

otherwise would be retained by plaintiffs. Such holding rested on the trial court's theory, that if plaintiffs kept the residence property and be held accountable for rent thereon, plaintiffs must pay defendants $6,-968.76; but if plaintiffs reconveyed the residence property to defendants and be held accountable for rent thereon, defendants must pay to plaintiffs $3,031.24. In so holding, however, the trial court overlooked the plain provision of the contract whereby the parties agreed that the down payment was "TEN THOUSAND DOLLARS . . . ($10,000.00) in cash, on execution of the contract, payment of which [by buyers] is by the Sellers hereby acknowledged," and substituted in lieu of the agreed cash item, an item of real property.

■ The court should not make the contract for the parties or interpret it to mean something which it in itself does not contain. Durant v. Snyder, 65 Idaho 678, 151 P.2d 776; Brothers v. Arave, 67 Idaho 171, 174 P.2d 202; Nuquist v. Bauscher, 71 Idaho 89, 227 P.2d 83; Vinsonhaler v. Notus-Parma Highway District, 81 Idaho 143, 338 P.2d 96; Taysom v. Taysom, 82 Idaho 58, 349 P.2d 556; J. R. Simplot Company v. Chambers, 82 Idaho 104, 350 P.2d 211.

Additional circumstances must be considered in further disposition of plaintiffs' first assignment of error.

Plaintiffs, vendors, had performed on their part and in nowise were in default under the contract; by reason thereof the trial court sustained their action, directed against the defendants. Defendants, vendees, were in default in failing to make further payments as required under the contract; and they failed to prove fraud by plaintiffs in the transaction; thus the trial court properly dismissed defendants' action for rescission. The instant lawsuit is in consequence of the unexcused default of defendants in making payments as called for by the contract.

■ In nearly all jurisdictions of this country, a vendee in default cannot, as a general rule, recover back the money he has paid on the contract. See Annos. 59 A.L.R. 189, 102 A.L.R. 852, and 134 A.L.R. 1064; Hall v. Yaryan, 25 Idaho 470, 138 P. 339; Hinsch v. Mothorn, 44 Idaho 539, 258 P. 540; Coe v. Bennett, 46 Idaho 62, 266 P. 413; Williamson v. Wilson, 56 Idaho 198, 52 P.2d 138.

■ Where rescission is granted to the vendee, he is entitled to a return of so much of the purchase money as he has paid together with interest thereon from time of payment. Sorensen v. Larue, 47 Idaho 772, 278 P. 1016; Fuchs v. Lloyd, 80 Idaho 114, 326 P.2d 381. This is not true where rescission is not granted.

■ Whether plaintiffs' cause of action is grounded at law or in equity is im-

material; for in this jurisdiction distinctions between actions at law and suits in equity, and the forms of all such actions and suits, are prohibited. Idaho Const. Art. 5, § 1; Addy v. Stewart, 69 Idaho 357, 207 P.2d 498; relief will be granted in any case where the pleadings and proof entitle plaintiff to relief whether legal or equitable. Addy v. Stewart, supra.

Plaintiffs' theory of their case is, that the amount paid under the contract, agreed to be retained by them as liquidated damages, must be offset by the value of defendants' use and occupancy of the ranch property, and by defendants' damages thereto; also by defendants' possession of the property during the spring and early summer of the 1961 farming season (until at least the middle of June 1961) under the circumstances of this litigation, as stated by plaintiffs, "where they [defendants] would hardly be inclined to be conscientious about doing spring farming work," thereby depreciating the value of the possession and use of the property to plaintiffs as farm or ranch property for that farming season; that when thus properly accounted for, the retention of such amount by plaintiffs conforms to the agreement of the parties as regards the liquidated damages; and that the amount thus to be retained is not disproportionate to the amount of damages actually sustained; nor unconscionable, so as to be constituted a penalty.

In Graves v. Cupic, supra, after an exhaustive analysis of the law bearing on the subject, this Court reiterated the rule adopted in this jurisdiction, well expressed by Perkins v. Spencer, 121 Utah 468, 243 P.2d 446, quoting from the earlier case of Bramwell Inv. Co. v. Uggla, 81 Utah 85, 16 P.2d 913, as follows:

"'* * * This court is committed to the doctrine, that where the parties to a contract stipulate the amount of liquidated damages that shall be paid in case of a breach, such stipulation is, as a general rule, enforceable, if the amount stipulated is not disproportionate to the damages actually sustained.'"

This Court then reiterated the converse of such rule, also adopted in this jurisdiction, that where the damages stipulated by the parties are clearly unconscionable, exorbitant and arbitrary, and bear no reasonable relation to the damages which the parties could have anticipated from the breach which occurred, then the provision is to be interpreted as for a penalty and is unenforceable. See also Scogings v. Love, 79 Idaho 179, 312 P.2d 570; Walker v. Nunnenkamp, 84 Idaho 485, 373 P.2d 559. The rule is well stated in Howard v. Bar Bell Land & Cattle Co., 81 Idaho 189, 197, 340 P.2d 103, as follows:

"It is the lawful privilege of the parties to a contract for the sale of real property to make time of perform-

ance of the essence of their agreement. It is also their privilege to agree in advance upon the damages to be recompensed in case of breach. The courts, both at law and in equity, must respect the provisions of a contract lawfully agreed to. (Citations.) But, where the facts make the damage agreed to an unconscionable penalty, equity will intercede to grant relief. (Citation.)"

■ The remaining issue raised by plaintiffs' assignments of error is whether the trial court erred in failing to find and adjudge that retention by plaintiffs of the total of all payments made by defendants, as liquidated damages, is reasonable relief and not disproportionate to the amount of plaintiffs' actual damages sustained.

Defendants paid $10,578.76 prior to default; against this amount the trial court properly charged $7,600 as the rental value of defendants' use and occupancy of the ranch property; remaining is a balance of $2,978.76, which sum plaintiffs also seek to retain as liquidated damages likewise as compensation for their actual damages suffered by reason of defendants' "non-performance" of the contract.

The cases which defendants have submitted wherein the court held that the amounts, if retained by the vendor, would be unconscionable and hence a penalty, all involved much greater amounts sought to be retained, in relation to the sale price, than does the case at bar.

In Graves v. Cupic, supra, the amount paid was $14,500.00 or 29% on a purchase price of $50,000.00. Damages were found to be but $3,000.00; forfeiture was denied.

In Melton v. Amar, 83 Idaho 99, 358 P. 2d 855, $31,926.50, or approximately 32% was paid on a contract which recited a purchase price of $100,000.00. The case was remanded with directions to determine the damages, and if the amount then involved would constitute a penalty.

In Freedman v. Rector, etc. of St. Mathias Parish, 37 Cal.2d 16, 230 P.2d 629, 31 A.L.R.2d 1, $2,000.00 was paid on a contract, with the balance of $16,000.00 to be paid to an escrow holder within 30 days. Upon purchaser's nonpayment of such balance and after expiration of the stipulated 30 days, seller cancelled the escrow and thereupon sold the property to a third party for $2,000.00 in excess of the purchase price the former buyer had agreed to pay. Since buyer had defaulted he was denied specific performance; and, inasmuch as the seller had resold the property for $2,000.00 more than the former buyer had agreed to pay, the court held that the seller had sustained no damage by reason of the breach, and therefore required restitution by the seller to the former buyer of his down payment of $2,000.00.

In Malmberg v. Baugh, 62 Utah 331, 218 P. 975, $4,450.00 or 45% was paid on a $10,000.00 purchase price. The court denied forfeiture.

Statements contained in the trial court's findings must be considered in determining whether plaintiffs' retention of the amount involved would be unconscionable, as well as the fact that defendants retained possession of the premises well into the 1961 farming season. Such statements by the trial court are, " * * * the indication is that the premises have been allowed to run down. The building of sheep sheds by the purchasers was for their direct use and would be of doubtful value to the sellers." The court then stated that the addition of such sheep sheds to the property "would tend to offset any damage to the place." The foregoing indicates that the trial court concluded that defendants' damage to the premises was offset by their improvements. Any such conclusion, however, cannot alter the finding that "the sellers [plaintiffs] produced much greater crops when they operated the ranch than was produced by purchasers [defendants] while they were in possession." Such finding upholds plaintiffs' assertion in support of additional actual damages sustained, that defendants were in possession of the ranch property well into the 1961 farming season (at least until the middle of June 1961) which, under the circumstances of this litigation, as stated by plaintiffs, would hardly be conducive to their [defendants'] being "conscientious about doing spring farming work."

In the light of all the facts and circumstances of this case we are constrained to the view that retention by plaintiffs of the amount paid under the contract, as liquidated damages, is not disproportionate to plaintiffs' actual damages sustained; particularly is this true when such amount is offset by the amount found as the value of defendants' use and occupancy of the premises for the period of some thirty-eight months (until at least the middle of June 1961) which included defendants' possession during the three prior farming seasons, with much less effort put forth by defendants in cultivation of the farm lands than by plaintiffs during their possession of the premises; also when offset by defendants' possession of the ranch property during the spring and early summer of 1961, so late during that farming season as to render the value of possession of the property to plaintiffs as farm property for that farming season questionable or greatly depreciated. We therefore hold that retention of such amount by plaintiffs is in conformity with the agreement of the parties as regards the liquidated damages in the event of defendants' breach, and hence is not so disproportionate in comparison to plaintiffs' actual damages so as to constitute a penalty.

The judgment of the trial court, adjudging cancellation of the contract and restoration to plaintiffs of the real property involved under the contract, is affirmed; in all other respects the judgment is reversed; the cause is remanded with instructions to the trial court to enter new findings of fact, conclusions of law, and judgment in favor of plaintiffs, in conformity herewith.

Costs to appellants.

KNUDSON, C. J., and McQUADE, McFADDEN and TAYLOR, JJ., concur.